# United States Court of Appeals
## For the First Circuit

No. 06-1768

UNITED STATES OF AMERICA,

Appellee,

v.

HAROLD ORTIZ-GRAULAU,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Jay A. García-Gregory, U.S. District Judge]

Before

Boudin, Chief Judge,
Selya, Senior Circuit Judge,
and Keenan,[*] Senior District Judge.

Héctor Ramos-Vega with whom Joseph C. Laws, Jr., Federal Public Defender, and Patricia A. Garrity, Assistant Federal Public Defender, were on brief for appellant.
Nelson Pérez-Sosa, Assistant United States Attorney, Chief, Appellate Division, with whom Rosa Emilia Rodríguez-Vélez, United States Attorney, was on brief for appellee.

May 20, 2008

[*]Of the Southern District of New York, sitting by designation.

**BOUDIN, Chief Judge.** Between November 2004 and May 2005, Harold Ortiz-Graulau, then age thirty-eight, carried on a consensual sexual relationship with a fourteen-year-old female identified as SMN. Shortly after the two became acquainted, SMN dropped out of the ninth grade and moved into Ortiz' home; for the next six months, Ortiz and SMN lived together as a couple. Despite the large age difference between the two, their relationship was at the time legal under Puerto Rico law.[1]

On several occasions Ortiz brought rolls of film to be developed at a Walgreens drugstore in San German, Puerto Rico. After Walgreens' employees noticed that some of the images appeared to depict a young girl engaged in sexual activities or posed in a sexually explicit manner, the store manager alerted authorities. A subsequent search of Ortiz' home uncovered 287 photographs; of these over 50 either depicted sexual contact between Ortiz and SMN or showed SMN in a sexually explicit position.

Arrested and interviewed, Ortiz admitted that he had a sexual relationship with SMN and that he took the explicit photographs with the knowledge that she was fourteen at the time. United States v. Ortiz-Graulau, 397 F. Supp. 2d 345, 347 (D.P.R. 2005). But Ortiz insisted that the photographs were not properly

---

[1]The age of consent in Puerto Rico was fourteen at the time Ortiz took the photographs. See P.R. Laws Ann. tit. 33, § 4061(a) (2002). The Penal Code of 2004, which went into effect on May 1, 2005, increased the age of consent to sixteen. See Penal Code of 2004 Art. 142.

-2-

considered child pornography because he and SMN were living together legally in a "marital-like" relationship.

On October 12, 2005, a federal grand jury in the District of Puerto Rico returned a two-count indictment charging Ortiz with possessing sexually explicit photographs of a minor, 18 U.S.C. § 2252(a)(4)(B) (2000) (count I), and exploiting a minor for the purpose of producing the photographs, 18 U.S.C. § 2251(a) (count II). After a failed effort to have the indictment dismissed, Ortiz pled guilty to the former count but went to trial on the latter.

At trial, the government offered the photographs, information about their discovery, Ortiz' statement to the police upon his arrest, a portion of Ortiz' plea colloquy, and proof that SMN's birth certificate was in Ortiz' car. SMN's mother testified as to SMN's age and confirmed that the photographs depicted her daughter. The parties stipulated to the interstate or foreign commerce requirement in the exploitation statute. Ortiz and SMN did not testify. Ortiz was convicted and sentenced to 180 months in prison.

On this appeal, Ortiz argues that the evidence was insufficient to prove count II, that his count I plea colloquy was improperly admitted in the count II trial, and that the sentence on count I was not adequately justified by the judge. The standard of review varies with the issue. We start with the statute, which

provides the relevant framework for considering whether the offense was proved by the government.

The crime captioned "[s]exual exploitation of children," charged in count II, embraces one who "employs, uses, persuades, induces, entices, or coerces any minor to engage in . . . sexually explicit conduct for the purpose of producing any visual depiction of such conduct," subject to proof of a commerce element not here in dispute. 18 U.S.C. § 2251(a). Neither does Ortiz deny that various of the photographs portrayed "sexually explicit conduct" within the meaning of the statute. Id. § 2256(2)(A).

Rather, he says that the statutory "purpose" element was not proved because no evidence was presented showing that Ortiz used or employed SMN to engage in sexual activity and no proof offered that Ortiz took the photographs to exploit SMN or to traffic in child pornography. The purpose, says Ortiz, was to memorialize their intimate relationship rather than to make pictures, that he was not aware that to do so was unlawful and that the jury was wrongly denied evidence that SMN was living with Ortiz in a lawful quasi-marital relationship.

This summary conflates several different arguments. Evidence is indeed lacking as to the detailed circumstances surrounding SMN's conduct and the taking of the photographs; but the argument that one would expect to follow is that therefore Ortiz has not been shown by the government's evidence to have

employed or used SMN, let alone enticed or coerced her, to engage in the sexual activity. But this argument is not explicitly made and if made would not be persuasive.

Given the difference in ages--38 versus 14--and the fact that Ortiz participated in some of the sexual contact and admitted to taking the photographs (or at least many of them), the jury could reasonably infer that it was Ortiz who instigated at least some of the conduct; and Ortiz does not argue that terms like "employ" or "use" require more than instigation, at least in the context of this statute. Whether something less than instigation might suffice need not be decided.

The statutory argument that Ortiz does develop relates to the statute's requirement that the--or at least a--"purpose" of the defendant must be to foster sexually explicit conduct by a minor in order to make a visual depiction of it. Ortiz seems to say that evidence of such purpose is lacking because there is no proof that sexual acts or poses were performed in order to make photographs, nor (a rather different point) were they done with the aim of peddling or displaying the pictures to others.

Ortiz's first point implies that the conduct was occurring anyway and just happened to be photographed. But the number of photographs, many of sexually explicit poses, permits a strong inference that some of the conduct occurred in order to make the photographs. See United States v. Morales-de Jesus, 372 F.3d

-5-

6, 22 (1st Cir. 2004), cert. denied, 545 U.S. 1130 (2005). This is not a case of a security camera mechanically picking up a random act. Here, a jury could infer that at least some of the sexual conduct occurred in order to make a depiction of it.

As for Ortiz' intended use of the photographs, the statute's language requires only that a visual depiction be made. Perhaps Congress mainly sought to suppress trafficking in child pornography; but a pecuniary purpose requirement was earlier deleted from the statute, United States v. Sirois, 87 F.3d 34, 40 (2d Cir. 1996), and preventing exploitation of children could be aided by the statute's broad ban on taking such photographs even for private use. Cf. Gonzales v. Raich, 545 U.S. 1, 21-22 (2005).

Ortiz probably did not understand that his conduct was criminal: the government points to no proof that Ortiz knew the law, and his lack of concealment and the then-applicable age of consent in Puerto Rico support his factual claim. But neither the statute nor precedent suggests that this is a rare instance in which ignorance of the law is a defense, compare Cheek v. United States, 498 U.S. 192, 199 (1991), although this might well be relevant in sentencing.

Ortiz also complains--although this is an admissibility and not a sufficiency argument--that the jury was not told of his ongoing relationship with SMN. Despite the language of the statute, Congress may well not have intended to make it criminal

for a husband and wife to take intimate photographs of each other for their private use; this is so even if the instigator were twenty-one and the other spouse seventeen, thus falling within the plain terms of the statute's prohibition. If the government brought such a case, judges might seek to devise limits even on "plain" language; indeed, some judges have even suggested constitutional objections based on marital or consenting-adult privacy rights.[2]

But Ortiz and SMN were not married--and could not have been without permission, see Ortiz-Graulau, 397 F. Supp. 2d at 349--and the argument again is not properly developed. Ortiz simply says that evidence of the relationship should have been allowed--without explaining how it relates to any defensible reading of the statute. As presented, the argument looks simply like an effort to invite jury nullification. See generally United States v. Manning, 79 F.3d 212, 219 (1st Cir.), cert. denied, 519 U.S. 853 (1996); 6 LaFave, Israel, King & Kerr, Criminal Procedure § 22.1(g) (3d ed. 2007).

In the district court, unsuccessfully opposing an in limine motion by the government seeking to exclude evidence of the

---

[2]See Ortiz-Graulau, 397 F. Supp. 2d at 348-49 (describing case law); see also Morales-de Jesus, 372 F. 3d at 18. But see id. at 22 (Lynch, J., concurring); United States v. Robinson, 137 F.3d 652, 656-57 (1st Cir. 1998). Some courts have conjured up commerce clause limitations as well. See United States v. McCoy, 323 F.3d 1114, 1129-30 (9th Cir. 2003); United States v. Corp, 236 F.3d 325, 332-33 (6th Cir. 2001).

relationship, Ortiz did suggest briefly several reasons why the evidence might have been relevant, especially, to negate inferences of coercion--inferences that (apart from their relevance to a statutory element) could easily have been prejudicial. But no such argument has been developed on appeal, and--district judge discretion aside--our precautionary review of the government's closing argument shows no attempt to exploit any such inference.

The _in limine_ motion had one other consequence. At trial, after the close of the government's case and denial of a motion for a directed acquittal, the defense called SMN to make a proffer outside the jury's presence of testimony that she was prepared to give; she said, in response to defense counsel's sequential questions, that Ortiz had not "coerced," "enticed," "employed" or "used" her to make the photographs. She was also prepared to testify that the making of the photographs had been discussed between them but no detail was furnished.[3]

The district court excluded the testimony, seemingly on the ground that it contravened the _in limine_ ruling which the government invoked. If this happened and for this reason, the exclusion was arguably a mistake: the _in limine_ ruling was directed

_____

[3]The proffer testimony was fragmentary, partly because of objections from the prosecutor--remarkable under the circumstances--that the proffer was being elicited by leading questions. The transcript also notes a sidebar conference, apparently not recorded, in which counsel and the judge conferred about the matter.

to the ongoing consensual relationship which was not shown to be a legal defense; by contrast, SMN was perfectly entitled to testify as to _facts_ bearing directly on a specific _statutory_ element, namely, whether Ortiz "employe[d], use[d], persuade[d], induce[d], entice[d], or coerce[d]" her in the conduct that was then photographed.[4]  But, for reasons not explained, no objection is made to this latter ruling on appeal.

We are sufficiently concerned that we have considered whether the matter deserved our attention _sua sponte_, a power we can invoke in extraordinary cases to avoid a miscarriage of justice, United States v. Rivera-Rosario, 300 F.3d 1, 10 n.1 (1st Cir. 2002).  If the witness had _facts_ to offer, the exclusion might well have been prejudicial.  But  the circumstances of the proffer, just what the witness would have said if permitted to testify, the judge's full reasons for his decision, and the actions and motivations of trial counsel are all unclear.

Given that the issue was not raised on appeal and that it would require considerable factual development, this is a matter that is properly left for a proceeding under 28 U.S.C. § 2255,

---

[4]The old objection to testifying on the "ultimate issue" has much less force today, see United States v. Vega-Figueroa, 234 F.3d 744, 754-55 (1st Cir. 2000); a court might, or might not, have admitted the testimony.  But SMN's view on whether she was "used" or "employed" would be of little legitimate help to the jury; what she could properly offer is factual information about who suggested the photographs and the conduct being photographed and related background.

relating to the effectiveness of counsel.  If such a proceeding is brought, we would expect the district court, so long as Ortiz qualifies financially, promptly to appoint conflict-free counsel to assist defendant in this endeavor.  United States v. Mala, 7 F.3d 1058, 1063-64 (1st Cir. 1993); United States v. Garcia-Rodrigues, 215 F.3d 1332 (1st Cir. 2000) (table).

This brings us to a quite different claim that Ortiz does make on appeal, namely, that evidence was improperly offered against him.  During the trial, the government read to the jury a portion of the hearing transcript recording Ortiz' guilty plea to the count I charge of possession of child pornography.  At the plea colloquy, Ortiz had confirmed that he had knowingly possessed sexually explicit photographs of a minor.  At trial on count II defense counsel objected to the reading of the colloquy as lacking relevance and being needlessly prejudicial.  The denial of the objection is now claimed as error.

The colloquy had some relevance in nailing down Ortiz' knowledge of the contents of the photographs and it is hard to see why the admission was unduly prejudicial: he admitted taking the photographs, which were more vivid than the colloquy and were themselves presented to the jury.  The colloquy does not contribute much to the sufficiency of the evidence (which was adequate anyway); but neither is it apparent why its admission should be regarded as error--still less prejudicial.

-10-

Ortiz' final argument is a challenge to his sentence.  He does not dispute the fifteen-year term imposed on count II--which is a mandatory minimum set by the statute, 18 U.S.C. § 2251(e)--but only the ten-year term concurrently imposed on count I.  Since the ten-year term was made concurrent with the longer term on the count II conviction here affirmed, nothing much has been shown to turn on whether it or something less is imposed; but Ortiz is entitled to receive a lawful sentence on each count.

For the convictions together, the applicable guideline range, whose computation Ortiz does not contest, was 180 to 210 months--primarily driven by the grouping rules that combined the two counts as closely related and then focused on the more serious of the two crimes.  U.S.S.G. § 3D1.2(b) (2005).  The district court chose the minimum figure (180 months) for <u>both</u> counts, noting the guideline range, referring briefly to the statutory factors and commenting critically on the girl's youth.

The district court then reduced the count I sentence to ten years when it was pointed out that this was the statutory maximum for a conviction under the possession statute, 18 U.S.C. § 2252(b)(2), but the court gave no further substantive explanation for choosing ten years rather than some lower figure.  This, Ortiz says on appeal, has led to an inadequately explained sentence; but Ortiz provides little reason why a lower sentence would have been justified on count I or why it matters.

-11-

Arguments for a lower sentence can easily be gleaned from contentions made in support of Ortiz' other claims: the consensual character of the relationship, compliance with the then-applicable age of consent, the absence of any evidence of coercion and the lack of any indication that Ortiz thought he was committing a crime. But, _if_ the composite guideline range governs both counts (and Ortiz does not claim otherwise), the ten year sentence was a substantial discount from the _minimum_ guideline figure.

Further, in the district court, Ortiz' own lawyer asked the court to impose a ten-year sentence on both counts, including count I. His brief does not even attempt to explain why Ortiz would be helped by a still lower sentence on this concurrent count. About all he says is that the judge should have said more--what about is not made clear--in explaining the sentence. So it is hard to describe Ortiz' sentence as unlawful and, given how modestly the issue has been briefed, we are not inclined to disturb the count I sentence.

But to be sure that a potential problem is not missed in future cases, we note an oddity in the guidelines' treatment of related counts. Even a back of the envelope calculation suggests that the count I guideline range would likely have been much lower--possibly 63 to 78 months--if count II had never been charged; indeed, this is so even though the range for count I taken alone

might include a handsome upward adjustment because of the sexual exploitation behavior.[5]

Yet the guideline grouping rules create a combined higher range for "the sentence" on both counts and merely instruct that the sentences for the separate counts be constructed so that the full term served meets the total number of years required. U.S.S.G. § 3D1.3(a).  Of course, given departures and Booker variances, United States v. Booker, 543 U.S. 220 (2005), the total sentence finally selected may be within or without the range, but following this approach produces a tension between count I sentences calculated in the two different situations.

Whether this tension often has real world consequences is unclear, and none have been suggested here; if the count II conviction in this case had been eliminated on appeal, Ortiz would have gotten a new sentencing hearing with a recomputed lower range, but since it is being affirmed, the count I figure does not increase the time he will serve.  But the problem deserves some further examination in a case where the issue is argued and shown to matter.

With the requirement of a pecuniary purpose deleted, section 2251(a) has a potential for producing some outcomes--

---

[5]The suggested range reflects a base offense level of 18, U.S.S.G. § 2G2.2(a)(1), and upward adjustments for the sexual exploitation of a minor, id. § 2G2.2(b)(5), and the number of images possessed, id. § 2G2.2(b)(7)(A), yielding an adjusted offense level of 25.

especially sentences--that are disquieting.  This may or may not be true in the present case: the photographs, as SMN's mother made clear, are not a full measure of the harm done to SMN's life by Ortiz' drawing her into the relationship.  But it is quite a different question whether this statute is the proper way to deal with family-related delinquencies ordinarily governed by local law.

Affirmed.